(Slip Opinion) OCTOBER TERM, 2008 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## ARIZONA *v.* GANT

### CERTIORARI TO THE SUPREME COURT OF ARIZONA

No. 07–542.   Argued October 7, 2008—Decided April 21, 2009

Respondent Gant was arrested for driving on a suspended license, handcuffed, and locked in a patrol car before officers searched his car and found cocaine in a jacket pocket.  The Arizona trial court denied his motion to suppress the evidence, and he was convicted of drug offenses.  Reversing, the State Supreme Court distinguished *New York* v. *Belton*, 453 U. S. 454—which held that police may search the passenger compartment of a vehicle and any containers therein as a contemporaneous incident of a recent occupant's lawful arrest—on the ground that it concerned the scope of a search incident to arrest but did not answer the question whether officers may conduct such a search once the scene has been secured.  Because *Chimel* v. *California*, 395 U. S. 752, requires that a search incident to arrest be justified by either the interest in officer safety or the interest in preserving evidence and the circumstances of Gant's arrest implicated neither of those interests, the State Supreme Court found the search unreasonable.

*Held:* Police may search the passenger compartment of a vehicle incident to a recent occupant's arrest only if it is reasonable to believe that the arrestee might access the vehicle at the time of the search or that the vehicle contains evidence of the offense of arrest.  Pp. 5–18.

   (a) Warrantless searches "are *per se* unreasonable," "subject only to a few specifically established and well-delineated exceptions."  *Katz* v. *United States*, 389 U. S. 347, 357.  The exception for a search incident to a lawful arrest applies only to "the area from within which [an arrestee] might gain possession of a weapon or destructible evidence."  *Chimel*, 395 U. S., at 763.  This Court applied that exception to the automobile context in *Belton,* the holding of which rested in large part on the assumption that articles inside a vehicle's passenger compartment are "generally . . . within 'the area into which an

arrestee might reach.'" 453 U. S., at 460. Pp. 5–8.

(b) This Court rejects a broad reading of *Belton* that would permit a vehicle search incident to a recent occupant's arrest even if there were no possibility the arrestee could gain access to the vehicle at the time of the search. The safety and evidentiary justifications underlying *Chimel*'s exception authorize a vehicle search only when there is a reasonable possibility of such access. Although it does not follow from *Chimel*, circumstances unique to the automobile context also justify a search incident to a lawful arrest when it is "reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." *Thornton* v. *United States*, 541 U. S. 615, 632 (SCALIA, J., concurring in judgment). Neither *Chimel*'s reaching-distance rule nor *Thornton*'s allowance for evidentiary searches authorized the search in this case. In contrast to *Belton*, which involved a single officer confronted with four unsecured arrestees, five officers handcuffed and secured Gant and the two other suspects in separate patrol cars before the search began. Gant clearly could not have accessed his car at the time of the search. An evidentiary basis for the search was also lacking. Belton and Thornton were both arrested for drug offenses, but Gant was arrested for driving with a suspended license—an offense for which police could not reasonably expect to find evidence in Gant's car. Cf. *Knowles* v. *Iowa*, 525 U. S. 113, 118. The search in this case was therefore unreasonable. Pp. 8–11.

(c) This Court is unpersuaded by the State's argument that its expansive reading of *Belton* correctly balances law enforcement interests with an arrestee's limited privacy interest in his vehicle. The State seriously undervalues the privacy interests at stake, and it exaggerates both the clarity provided by a broad reading of *Belton* and its importance to law enforcement interests. A narrow reading of *Belton* and *Thornton*, together with this Court's other Fourth Amendment decisions, *e.g.*, *Michigan* v. *Long*, 463 U. S. 103, and *United States* v. *Ross*, 456 U. S. 798, permit an officer to search a vehicle when safety or evidentiary concerns demand. Pp. 11–14.

(d) *Stare decisis* does not require adherence to a broad reading of *Belton*. The experience of the 28 years since *Belton* has shown that the generalization underpinning the broad reading of that decision is unfounded, and blind adherence to its faulty assumption would authorize myriad unconstitutional searches. Pp. 15–18.

216 Ariz. 1, 162 P. 3d 640, affirmed.

STEVENS, J., delivered the opinion of the Court, in which SCALIA, SOUTER, THOMAS, and GINSBURG, JJ., joined. SCALIA, J., filed a concurring opinion. BREYER, J., filed a dissenting opinion. ALITO, J., filed a dissenting opinion, in which ROBERTS, C. J., and KENNEDY, J., joined, and in which BREYER, J., joined except as to Part II–E.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 07–542

ARIZONA, PETITIONER *v.* RODNEY JOSEPH GANT

ON WRIT OF CERTIORARI TO THE SUPREME COURT OF ARIZONA

[April 21, 2009]

JUSTICE STEVENS delivered the opinion of the Court.

After Rodney Gant was arrested for driving with a suspended license, handcuffed, and locked in the back of a patrol car, police officers searched his car and discovered cocaine in the pocket of a jacket on the backseat. Because Gant could not have accessed his car to retrieve weapons or evidence at the time of the search, the Arizona Supreme Court held that the search-incident-to-arrest exception to the Fourth Amendment's warrant requirement, as defined in *Chimel* v. *California*, 395 U. S. 752 (1969), and applied to vehicle searches in *New York* v. *Belton*, 453 U. S. 454 (1981), did not justify the search in this case. We agree with that conclusion.

Under *Chimel*, police may search incident to arrest only the space within an arrestee's "'immediate control,'" meaning "the area from within which he might gain possession of a weapon or destructible evidence." 395 U. S., at 763. The safety and evidentiary justifications underlying *Chimel*'s reaching-distance rule determine *Belton*'s scope. Accordingly, we hold that *Belton* does not authorize a vehicle search incident to a recent occupant's arrest after the arrestee has been secured and cannot access the inte-

rior of the vehicle. Consistent with the holding in *Thornton* v. *United States*, 541 U. S. 615 (2004), and following the suggestion in JUSTICE SCALIA's opinion concurring in the judgment in that case, *id.*, at 632, we also conclude that circumstances unique to the automobile context justify a search incident to arrest when it is reasonable to believe that evidence of the offense of arrest might be found in the vehicle.

I

On August 25, 1999, acting on an anonymous tip that the residence at 2524 North Walnut Avenue was being used to sell drugs, Tucson police officers Griffith and Reed knocked on the front door and asked to speak to the owner. Gant answered the door and, after identifying himself, stated that he expected the owner to return later. The officers left the residence and conducted a records check, which revealed that Gant's driver's license had been suspended and there was an outstanding warrant for his arrest for driving with a suspended license.

When the officers returned to the house that evening, they found a man near the back of the house and a woman in a car parked in front of it. After a third officer arrived, they arrested the man for providing a false name and the woman for possessing drug paraphernalia. Both arrestees were handcuffed and secured in separate patrol cars when Gant arrived. The officers recognized his car as it entered the driveway, and Officer Griffith confirmed that Gant was the driver by shining a flashlight into the car as it drove by him. Gant parked at the end of the driveway, got out of his car, and shut the door. Griffith, who was about 30 feet away, called to Gant, and they approached each other, meeting 10-to-12 feet from Gant's car. Griffith immediately arrested Gant and handcuffed him.

Because the other arrestees were secured in the only patrol cars at the scene, Griffith called for backup. When

two more officers arrived, they locked Gant in the back-seat of their vehicle. After Gant had been handcuffed and placed in the back of a patrol car, two officers searched his car: One of them found a gun, and the other discovered a bag of cocaine in the pocket of a jacket on the backseat.

Gant was charged with two offenses—possession of a narcotic drug for sale and possession of drug paraphernalia (*i.e.*, the plastic bag in which the cocaine was found). He moved to suppress the evidence seized from his car on the ground that the warrantless search violated the Fourth Amendment. Among other things, Gant argued that *Belton* did not authorize the search of his vehicle because he posed no threat to the officers after he was handcuffed in the patrol car and because he was arrested for a traffic offense for which no evidence could be found in his vehicle. When asked at the suppression hearing why the search was conducted, Officer Griffith responded: "Because the law says we can do it." App. 75.

The trial court rejected the State's contention that the officers had probable cause to search Gant's car for contraband when the search began, *id.*, at 18, 30, but it denied the motion to suppress. Relying on the fact that the police saw Gant commit the crime of driving without a license and apprehended him only shortly after he exited his car, the court held that the search was permissible as a search incident to arrest. *Id.*, at 37. A jury found Gant guilty on both drug counts, and he was sentenced to a 3-year term of imprisonment.

After protracted state-court proceedings, the Arizona Supreme Court concluded that the search of Gant's car was unreasonable within the meaning of the Fourth Amendment. The court's opinion discussed at length our decision in *Belton*, which held that police may search the passenger compartment of a vehicle and any containers therein as a contemporaneous incident of an arrest of the vehicle's recent occupant. 216 Ariz. 1, 3–4, 162 P. 3d 640,

642–643 (2007) (citing 453 U. S., at 460).  The court distinguished *Belton* as a case concerning the permissible scope of a vehicle search incident to arrest and concluded that it did not answer "the threshold question whether the police may conduct a search incident to arrest at all once the scene is secure."  216 Ariz., at 4, 162 P. 3d, at 643.  Relying on our earlier decision in *Chimel,* the court observed that the search-incident-to-arrest exception to the warrant requirement is justified by interests in officer safety and evidence preservation.  216 Ariz., at 4, 162 P. 3d, at 643.  When "the justifications underlying *Chimel* no longer exist because the scene is secure and the arrestee is handcuffed, secured in the back of a patrol car, and under the supervision of an officer," the court concluded, a "warrantless search of the arrestee's car cannot be justified as necessary to protect the officers at the scene or prevent the destruction of evidence."  *Id.,* at 5, 162 P. 3d, at 644.  Accordingly, the court held that the search of Gant's car was unreasonable.

The dissenting justices would have upheld the search of Gant's car based on their view that "the validity of a *Belton* search . . . clearly does not depend on the presence of the *Chimel* rationales in a particular case."  *Id.*, at 8, 162 P. 3d, at 647.  Although they disagreed with the majority's view of *Belton,* the dissenting justices acknowledged that "[t]he bright-line rule embraced in *Belton* has long been criticized and probably merits reconsideration."  216 Ariz., at 10, 162 P. 3d, at 649.  They thus "add[ed their] voice[s] to the others that have urged the Supreme Court to revisit *Belton.*"  *Id.*, at 11, 163 P. 3d, at 650.

The chorus that has called for us to revisit *Belton* includes courts, scholars, and Members of this Court who have questioned that decision's clarity and its fidelity to Fourth Amendment principles.  We therefore granted the State's petition for certiorari.  552 U. S. ___ (2008).

## II

Consistent with our precedent, our analysis begins, as it should in every case addressing the reasonableness of a warrantless search, with the basic rule that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz* v. *United States*, 389 U. S. 347, 357 (1967) (footnote omitted). Among the exceptions to the warrant requirement is a search incident to a lawful arrest. See *Weeks* v. *United States*, 232 U. S. 383, 392 (1914). The exception derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations. See *United States* v. *Robinson*, 414 U. S. 218, 230–234 (1973); *Chimel*, 395 U. S., at 763.

In *Chimel*, we held that a search incident to arrest may only include "the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." *Ibid.* That limitation, which continues to define the boundaries of the exception, ensures that the scope of a search incident to arrest is commensurate with its purposes of protecting arresting officers and safeguarding any evidence of the offense of arrest that an arrestee might conceal or destroy. See *ibid.* (noting that searches incident to arrest are reasonable "*in order to* remove any weapons [the arrestee] might seek to use" and "*in order to prevent* [the] concealment or destruction" of evidence (emphasis added)). If there is no possibility that an arrestee could reach into the area that law enforcement officers seek to search, both justifications for the search-incident-to-arrest exception are absent and the rule does not apply. *E.g.*, *Preston* v. *United States*, 376 U. S. 364, 367–368 (1964).

In *Belton*, we considered *Chimel*'s application to the

automobile context. A lone police officer in that case stopped a speeding car in which Belton was one of four occupants. While asking for the driver's license and registration, the officer smelled burnt marijuana and observed an envelope on the car floor marked "Supergold"—a name he associated with marijuana. Thus having probable cause to believe the occupants had committed a drug offense, the officer ordered them out of the vehicle, placed them under arrest, and patted them down. Without handcuffing the arrestees,[1] the officer "'split them up into four separate areas of the Thruway . . . so they would not be in physical touching area of each other'" and searched the vehicle, including the pocket of a jacket on the backseat, in which he found cocaine. 453 U. S., at 456.

The New York Court of Appeals found the search unconstitutional, concluding that after the occupants were arrested the vehicle and its contents were "safely within the exclusive custody and control of the police." *State* v. *Belton*, 50 N. Y. 2d 447, 452, 407 N. E. 2d 420, 423 (1980). The State asked this Court to consider whether the exception recognized in *Chimel* permits an officer to search "a jacket found inside an automobile while the automobile's four occupants, all under arrest, are standing unsecured around the vehicle." Brief in No. 80–328, p. *i.* We granted certiorari because "courts ha[d] found no workable definition of 'the area within the immediate control of the arrestee' when that area arguably includes the interior of an automobile." 453 U. S., at 460.

In its brief, the State argued that the Court of Appeals erred in concluding that the jacket was under the officer's exclusive control. Focusing on the number of arrestees and their proximity to the vehicle, the State asserted that

---

[1] The officer was unable to handcuff the occupants because he had only one set of handcuffs. See Brief for Petitioner in *New York* v. *Belton*, O. T. 1980, No. 80–328, p. 3 (hereinafter Brief in No. 80–328).

it was reasonable for the officer to believe the arrestees could have accessed the vehicle and its contents, making the search permissible under *Chimel*. Brief in No. 80–328, at 7–8. The United States, as *amicus curiae* in support of the State, argued for a more permissive standard, but it maintained that any search incident to arrest must be "'substantially contemporaneous'" with the arrest—a requirement it deemed "satisfied if the search occurs during the period in which the arrest is being consummated and before the situation has so stabilized that it could be said that the arrest was completed." Brief for United States as *Amicus Curiae* in *New York* v. *Belton*, O. T. 1980, No. 80–328, p. 14. There was no suggestion by the parties or *amici* that *Chimel* authorizes a vehicle search incident to arrest when there is no realistic possibility that an arrestee could access his vehicle.

After considering these arguments, we held that when an officer lawfully arrests "the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of the automobile" and any containers therein. *Belton*, 453 U. S., at 460 (footnote omitted). That holding was based in large part on our assumption "that articles inside the relatively narrow compass of the passenger compartment of an automobile are in fact generally, even if not inevitably, within 'the area into which an arrestee might reach.'" *Ibid.*

The Arizona Supreme Court read our decision in *Belton* as merely delineating "the proper scope of a search of the interior of an automobile" incident to an arrest, *id.*, at 459. That is, *when* the passenger compartment is within an arrestee's reaching distance, *Belton* supplies the generalization that the entire compartment and any containers therein may be reached. On that view of *Belton*, the state court concluded that the search of Gant's car was unreasonable because Gant clearly could not have accessed his car at the time of the search. It also found that no other

exception to the warrant requirement applied in this case.

Gant now urges us to adopt the reading of *Belton* followed by the Arizona Supreme Court.

## III

Despite the textual and evidentiary support for the Arizona Supreme Court's reading of *Belton*, our opinion has been widely understood to allow a vehicle search incident to the arrest of a recent occupant even if there is no possibility the arrestee could gain access to the vehicle at the time of the search. This reading may be attributable to Justice Brennan's dissent in *Belton*, in which he characterized the Court's holding as resting on the "fiction . . . that the interior of a car is *always* within the immediate control of an arrestee who has recently been in the car." 453 U. S., at 466. Under the majority's approach, he argued, "the result would presumably be the same even if [the officer] had handcuffed Belton and his companions in the patrol car" before conducting the search. *Id.*, at 468.

Since we decided *Belton*, Courts of Appeals have given different answers to the question whether a vehicle must be within an arrestee's reach to justify a vehicle search incident to arrest,[2] but Justice Brennan's reading of the

───────────

[2] Compare *United States* v. *Green*, 324 F. 3d 375, 379 (CA5 2003) (holding that *Belton* did not authorize a search of an arrestee's vehicle when he was handcuffed and lying facedown on the ground surrounded by four police officers 6-to-10 feet from the vehicle), *United States* v. *Edwards*, 242 F. 3d 928, 938 (CA10 2001) (finding unauthorized a vehicle search conducted while the arrestee was handcuffed in the back of a patrol car), *United States* v. *Vasey*, 834 F. 2d 782, 787 (CA9 1987) (finding unauthorized a vehicle search conducted 30-to-45 minutes after an arrest and after the arrestee had been handcuffed and secured in the back of a police car), with *United States* v. *Hrasky*, 453 F. 3d 1099, 1102 (CA8 2006) (upholding a search conducted an hour after the arrestee was apprehended and after he had been handcuffed and placed in the back of a patrol car); *United States* v. *Weaver*, 433 F. 3d 1104, 1106 (CA9 2006) (upholding a search conducted 10-to-15 minutes after an arrest and after the arrestee had been handcuffed and secured in

Court's opinion has predominated. As Justice O'Connor observed, "lower court decisions seem now to treat the ability to search a vehicle incident to the arrest of a recent occupant as a police entitlement rather than as an exception justified by the twin rationales of *Chimel*." *Thornton*, 541 U. S., at 624 (opinion concurring in part). JUSTICE SCALIA has similarly noted that, although it is improbable that an arrestee could gain access to weapons stored in his vehicle after he has been handcuffed and secured in the backseat of a patrol car, cases allowing a search in "this precise factual scenario . . . are legion." *Id.*, at 628 (opinion concurring in judgment) (collecting cases).[3] Indeed, some courts have upheld searches under *Belton* "even when . . . the handcuffed arrestee has already left the scene." 541 U. S., at 628 (same).

Under this broad reading of *Belton*, a vehicle search would be authorized incident to every arrest of a recent occupant notwithstanding that in most cases the vehicle's passenger compartment will not be within the arrestee's reach at the time of the search. To read *Belton* as authorizing a vehicle search incident to every recent occupant's arrest would thus untether the rule from the justifications underlying the *Chimel* exception—a result clearly incompatible with our statement in *Belton* that it "in no way alters the fundamental principles established in the *Chimel* case regarding the basic scope of searches incident

———————

the back of a patrol car), and *United States* v. *White*, 871 F. 2d 41, 44 (CA6 1989) (upholding a search conducted after the arrestee had been handcuffed and secured in the back of a police cruiser).

  [3] The practice of searching vehicles incident to arrest after the arrestee has been handcuffed and secured in a patrol car has not abated since we decided *Thornton*. See, *e.g.*, *United States* v. *Murphy*, 221 Fed. Appx. 715, 717 (CA10 2007); *Hrasky*, 453 F. 3d, at 1100; *Weaver*, 433 F. 3d, at 1105; *United States* v. *Williams*, 170 Fed. Appx. 399, 401 (CA6 2006); *United States* v. *Dorsey*, 418 F. 3d 1038, 1041 (CA9 2005); *United States* v. *Osife*, 398 F. 3d 1143, 1144 (CA9 2005); *United States* v. *Sumrall*, 115 Fed. Appx. 22, 24 (CA10 2004).

to lawful custodial arrests." 453 U. S., at 460, n. 3. Accordingly, we reject this reading of *Belton* and hold that the *Chimel* rationale authorizes police to search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search.[4]

Although it does not follow from *Chimel*, we also conclude that circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is "reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." *Thornton*, 541 U. S., at 632 (SCALIA, J., concurring in judgment). In many cases, as when a recent occupant is arrested for a traffic violation, there will be no reasonable basis to believe the vehicle contains relevant evidence. See, *e.g.*, *Atwater* v. *Lago Vista*, 532 U. S. 318, 324 (2001); *Knowles* v. *Iowa*, 525 U. S. 113, 118 (1998). But in others, including *Belton* and *Thornton*, the offense of arrest will supply a basis for searching the passenger compartment of an arrestee's vehicle and any containers therein.

Neither the possibility of access nor the likelihood of discovering offense-related evidence authorized the search in this case. Unlike in *Belton*, which involved a single officer confronted with four unsecured arrestees, the five officers in this case outnumbered the three arrestees, all of whom had been handcuffed and secured in separate patrol cars before the officers searched Gant's car. Under those

---

[4] Because officers have many means of ensuring the safe arrest of vehicle occupants, it will be the rare case in which an officer is unable to fully effectuate an arrest so that a real possibility of access to the arrestee's vehicle remains. Cf. 3 W. LaFave, Search and Seizure §7.1(c), p. 525 (4th ed. 2004) (hereinafter LaFave) (noting that the availability of protective measures "ensur[es] the nonexistence of circumstances in which the arrestee's 'control' of the car is in doubt"). But in such a case a search incident to arrest is reasonable under the Fourth Amendment.

circumstances, Gant clearly was not within reaching distance of his car at the time of the search. An evidentiary basis for the search was also lacking in this case. Whereas Belton and Thornton were arrested for drug offenses, Gant was arrested for driving with a suspended license—an offense for which police could not expect to find evidence in the passenger compartment of Gant's car. Cf. *Knowles*, 525 U. S., at 118. Because police could not reasonably have believed either that Gant could have accessed his car at the time of the search or that evidence of the offense for which he was arrested might have been found therein, the search in this case was unreasonable.

## IV

The State does not seriously disagree with the Arizona Supreme Court's conclusion that Gant could not have accessed his vehicle at the time of the search, but it nevertheless asks us to uphold the search of his vehicle under the broad reading of *Belton* discussed above. The State argues that *Belton* searches are reasonable regardless of the possibility of access in a given case because that expansive rule correctly balances law enforcement interests, including the interest in a bright-line rule, with an arrestee's limited privacy interest in his vehicle.

For several reasons, we reject the State's argument. First, the State seriously undervalues the privacy interests at stake. Although we have recognized that a motorist's privacy interest in his vehicle is less substantial than in his home, see *New York* v. *Class*, 475 U. S. 106, 112–113 (1986), the former interest is nevertheless important and deserving of constitutional protection, see *Knowles*, 525 U. S., at 117. It is particularly significant that *Belton* searches authorize police officers to search not just the passenger compartment but every purse, briefcase, or other container within that space. A rule that gives police the power to conduct such a search whenever an individ-

ual is caught committing a traffic offense, when there is no basis for believing evidence of the offense might be found in the vehicle, creates a serious and recurring threat to the privacy of countless individuals.  Indeed, the character of that threat implicates the central concern underlying the Fourth Amendment—the concern about giving police officers unbridled discretion to rummage at will among a person's private effects.[5]

At the same time as it undervalues these privacy concerns, the State exaggerates the clarity that its reading of *Belton* provides.  Courts that have read *Belton* expansively are at odds regarding how close in time to the arrest and how proximate to the arrestee's vehicle an officer's first contact with the arrestee must be to bring the encounter within *Belton*'s purview[6] and whether a search is reason-

──────────

[5] See *Maryland* v. *Garrison*, 480 U. S. 79, 84 (1987); *Chimel*, 395 U. S., at 760–761; *Stanford* v. *Texas*, 379 U. S. 476, 480–484 (1965); *Weeks* v. *United States*, 232 U. S. 383, 389–392 (1914); *Boyd* v. *United States*, 116 U. S. 616, 624–625 (1886); see also 10 C. Adams, The Works of John Adams 247–248 (1856).  Many have observed that a broad reading of *Belton* gives police limitless discretion to conduct exploratory searches.  See 3 LaFave §7.1(c), at 527 (observing that *Belton* creates the risk "that police will make custodial arrests which they otherwise would not make as a cover for a search which the Fourth Amendment otherwise prohibits"); see also *United States* v. *McLaughlin*, 170 F. 3d 889, 894 (CA9 1999) (Trott, J., concurring) (observing that *Belton* has been applied to condone "purely exploratory searches of vehicles during which officers with no definite objective or reason for the search are allowed to rummage around in a car to see what they might find"); *State* v. *Pallone*, 2001 WI 77, ¶¶87–90, 236 Wis. 2d 162, 203–204, and n. 9, 613 N. W. 2d 568, 588, and n. 9 (2000) (Abrahamson, C. J., dissenting) (same); *State* v. *Pierce*, 136 N. J. 184, 211, 642 A. 2d 947, 961 (1994) (same).

[6] Compare *United States* v. *Caseres*, 533 F. 3d 1064, 1072 (CA9 2008) (declining to apply *Belton* when the arrestee was approached by police after he had exited his vehicle and reached his residence), with *Rainey* v. *Commonwealth*, 197 S. W. 3d 89, 94–95 (Ky. 2006) (applying *Belton* when the arrestee was apprehended 50 feet from the vehicle), and *Black* v. *State*, 810 N. E. 2d 713, 716 (Ind. 2004) (applying *Belton* when

able when it commences or continues after the arrestee has been removed from the scene.[7]  The rule has thus generated a great deal of uncertainty, particularly for a rule touted as providing a "bright line."  See 3 LaFave, §7.1(c), at 514–524.

Contrary to the State's suggestion, a broad reading of *Belton* is also unnecessary to protect law enforcement safety and evidentiary interests.  Under our view, *Belton* and *Thornton* permit an officer to conduct a vehicle search when an arrestee is within reaching distance of the vehicle or it is reasonable to believe the vehicle contains evidence of the offense of arrest.  Other established exceptions to the warrant requirement authorize a vehicle search under additional circumstances when safety or evidentiary concerns demand.  For instance, *Michigan* v. *Long*, 463 U. S. 1032 (1983), permits an officer to search a vehicle's passenger compartment when he has reasonable suspicion that an individual, whether or not the arrestee, is "dangerous" and might access the vehicle to "gain immediate control of weapons."  *Id.*, at 1049 (citing *Terry* v. *Ohio*, 392 U. S. 1, 21 (1968)).  If there is probable cause to believe a vehicle contains evidence of criminal activity, *United States* v. *Ross*, 456 U. S. 798, 820–821 (1982), authorizes a search of any area of the vehicle in which the evidence might be found.  Unlike the searches permitted by

──────────

the arrestee was apprehended inside an auto repair shop and the vehicle was parked outside).

[7] Compare *McLaughlin*, 170 F. 3d, at 890–891 (upholding a search that commenced five minutes after the arrestee was removed from the scene), *United States* v. *Snook*, 88 F. 3d 605, 608 (CA8 1996) (same), and *United States* v. *Doward*, 41 F. 3d 789, 793 (CA1 1994) (upholding a search that continued after the arrestee was removed from the scene), with *United States* v. *Lugo*, 978 F. 2d 631, 634 (CA10 1992) (holding invalid a search that commenced after the arrestee was removed from the scene), and *State* v. *Badgett*, 200 Conn. 412, 427–428, 512 A. 2d 160, 169 (1986) (holding invalid a search that continued after the arrestee was removed from the scene).

JUSTICE SCALIA's opinion concurring in the judgment in *Thornton*, which we conclude today are reasonable for purposes of the Fourth Amendment, *Ross* allows searches for evidence relevant to offenses other than the offense of arrest, and the scope of the search authorized is broader. Finally, there may be still other circumstances in which safety or evidentiary interests would justify a search. Cf. *Maryland* v. *Buie*, 494 U. S. 325, 334 (1990) (holding that, incident to arrest, an officer may conduct a limited protective sweep of those areas of a house in which he reasonably suspects a dangerous person may be hiding).

These exceptions together ensure that officers may search a vehicle when genuine safety or evidentiary concerns encountered during the arrest of a vehicle's recent occupant justify a search. Construing *Belton* broadly to allow vehicle searches incident to any arrest would serve no purpose except to provide a police entitlement, and it is anathema to the Fourth Amendment to permit a warrantless search on that basis. For these reasons, we are unpersuaded by the State's arguments that a broad reading of *Belton* would meaningfully further law enforcement interests and justify a substantial intrusion on individuals' privacy.[8]

———————

[8]At least eight States have reached the same conclusion. Vermont, New Jersey, New Mexico, Nevada, Pennsylvania, New York, Oregon, and Wyoming have declined to follow a broad reading of *Belton* under their state constitutions. See *State* v. *Bauder*, 181 Vt. 392, 401, 924 A. 2d 38, 46–47 (2007); *State* v. *Eckel,* 185 N. J. 523, 540, 888 A. 2d 1266, 1277 (2006); *Camacho* v. *State*, 119 Nev. 395, 399–400, 75 P. 3d 370, 373–374 (2003); *Vasquez* v. *State*, 990 P. 2d 476, 488–489 (Wyo. 1999); *State* v. *Arredondo*, 1997–NMCA–081, 123 N. M. 628, 636 (Ct. App.), overruled on other grounds by *State* v. *Steinzig*, 1999–NMCA–107, 127 N. M. 752 (Ct. App.); *Commonwealth* v. *White*, 543 Pa. 45, 57, 669 A. 2d 896, 902 (1995); *People* v. *Blasich*, 73 N. Y. 2d 673, 678, 541 N. E. 2d 40, 43 (1989); *State* v. *Fesler*, 68 Ore. App. 609, 612, 685 P. 2d 1014, 1016–1017 (1984). And a Massachusetts statute provides that a search incident to arrest may be made only for the purposes of seizing

Opinion of the Court

## V

Our dissenting colleagues argue that the doctrine of *stare decisis* requires adherence to a broad reading of *Belton* even though the justifications for searching a vehicle incident to arrest are in most cases absent.[9] The doctrine of *stare decisis* is of course "essential to the respect accorded to the judgments of the Court and to the stability of the law," but it does not compel us to follow a past decision when its rationale no longer withstands "careful analysis." *Lawrence* v. *Texas*, 539 U. S. 558, 577 (2003).

We have never relied on *stare decisis* to justify the continuance of an unconstitutional police practice. And we would be particularly loath to uphold an unconstitutional result in a case that is so easily distinguished from the decisions that arguably compel it. The safety and evidentiary interests that supported the search in *Belton* simply are not present in this case. Indeed, it is hard to imagine two cases that are factually more distinct, as *Belton* involved one officer confronted by four unsecured arrestees suspected of committing a drug offense and this case involves several officers confronted with a securely detained arrestee apprehended for driving with a suspended license. This case is also distinguishable from *Thornton*, in which the petitioner was arrested for a drug offense. It is thus unsurprising that Members of this Court who

––––––––––

weapons or evidence of the offense of arrest. See *Commonwealth* v. *Toole*, 389 Mass. 159, 161–162, 448 N. E. 2d 1264, 1266–1267 (1983) (citing Mass. Gen. Laws, ch. 276, §1 (West 2007)).

　[9]JUSTICE ALITO's dissenting opinion also accuses us of "overrul[ing]" *Belton* and *Thornton* v. *United States*, 541 U. S. 615 (2004), "even though respondent Gant has not asked us to do so." *Post*, at 1. Contrary to that claim, the narrow reading of *Belton* we adopt today is precisely the result Gant has urged. That JUSTICE ALITO has chosen to describe this decision as overruling our earlier cases does not change the fact that the resulting rule of law is the one advocated by respondent.

concurred in the judgments in *Belton* and *Thornton* also concur in the decision in this case.[10]

We do not agree with the contention in JUSTICE ALITO's dissent (hereinafter dissent) that consideration of police reliance interests requires a different result. Although it appears that the State's reading of *Belton* has been widely taught in police academies and that law enforcement officers have relied on the rule in conducting vehicle searches during the past 28 years,[11] many of these searches were not justified by the reasons underlying the *Chimel* exception. Countless individuals guilty of nothing more serious than a traffic violation have had their constitutional right to the security of their private effects violated as a result. The fact that the law enforcement community may view the State's version of the *Belton* rule as an entitlement does not establish the sort of reliance interest that could outweigh the countervailing interest that all individuals share in having their constitutional rights fully protected. If it is clear that a practice is unlawful, individuals' interest in its discontinuance clearly outweighs any law enforcement "entitlement" to its persistence. Cf. *Mincey* v. *Arizona*, 437 U. S. 385, 393 (1978) ("[T]he mere fact that law enforcement may be made more efficient can never by itself justify disregard of the Fourth Amendment"). The dissent's reference in this regard to the reliance interests cited in *Dickerson* v. *United States*, 530 U. S. 428 (2000), is misplaced. See *post*, at 5. In observing that "*Miranda* has become embedded in routine

_____

[10] JUSTICE STEVENS concurred in the judgment in *Belton*, 453 U. S., at 463, for the reasons stated in his dissenting opinion in *Robbins* v. *California*, 453 U. S. 420, 444 (1981), JUSTICE THOMAS joined the Court's opinion in *Thornton*, 541 U. S. 615, and JUSTICE SCALIA and JUSTICE GINSBURG concurred in the judgment in that case, *id.*, at 625.

[11] Because a broad reading of *Belton* has been widely accepted, the doctrine of qualified immunity will shield officers from liability for searches conducted in reasonable reliance on that understanding.

police practice to the point where the warnings have become part of our national culture," 530 U. S., at 443, the Court was referring not to police reliance on a rule requiring them to provide warnings but to the broader societal reliance on that individual right.

The dissent also ignores the checkered history of the search-incident-to-arrest exception. Police authority to search the place in which a lawful arrest is made was broadly asserted in *Marron* v. *United States*, 275 U. S. 192 (1927), and limited a few years later in *Go-Bart Importing Co.* v. *United States*, 282 U. S. 344 (1931), and *United States* v. *Lefkowitz*, 285 U. S. 452 (1932). The limiting views expressed in *Go-Bart* and *Lefokwitz* were in turn abandoned in *Harris* v. *United States*, 331 U. S. 145 (1947), which upheld a search of a four-room apartment incident to the occupant's arrest. Only a year later the Court in *Trupiano* v. *United States*, 334 U. S. 699, 708 (1948), retreated from that holding, noting that the search-incident-to-arrest exception is "a strictly limited" one that must be justified by "something more in the way of necessity than merely a lawful arrest." And just two years after that, in *United States* v. *Rabinowitz*, 339 U. S. 56 (1950), the Court again reversed course and upheld the search of an entire apartment. Finally, our opinion in *Chimel* overruled *Rabinowitz* and what remained of *Harris* and established the present boundaries of the search-incident-to-arrest exception. Notably, none of the dissenters in *Chimel* or the cases that preceded it argued that law enforcement reliance interests outweighed the interest in protecting individual constitutional rights so as to warrant fidelity to an unjustifiable rule.

The experience of the 28 years since we decided *Belton* has shown that the generalization underpinning the broad reading of that decision is unfounded. We now know that articles inside the passenger compartment are rarely "within 'the area into which an arrestee might reach,'" 453

U. S., at 460, and blind adherence to *Belton*'s faulty assumption would authorize myriad unconstitutional searches. The doctrine of *stare decisis* does not require us to approve routine constitutional violations.

## VI

Police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest. When these justifications are absent, a search of an arrestee's vehicle will be unreasonable unless police obtain a warrant or show that another exception to the warrant requirement applies. The Arizona Supreme Court correctly held that this case involved an unreasonable search. Accordingly, the judgment of the State Supreme Court is affirmed.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

———————

No. 07–542

———————

## ARIZONA, PETITIONER *v.* RODNEY JOSEPH GANT

ON WRIT OF CERTIORARI TO THE SUPREME COURT OF
ARIZONA

[April 21, 2009]

JUSTICE SCALIA, concurring.

To determine what is an "unreasonable" search within the meaning of the Fourth Amendment, we look first to the historical practices the Framers sought to preserve; if those provide inadequate guidance, we apply traditional standards of reasonableness. See *Virginia* v. *Moore*, 553 U. S. ___, ___ (2008) (slip op., at 3–6). Since the historical scope of officers' authority to search vehicles incident to arrest is uncertain, see *Thornton* v. *United States*, 541 U. S. 615, 629–631 (2004) (SCALIA, J., concurring in judgment), traditional standards of reasonableness govern. It is abundantly clear that those standards do not justify what I take to be the rule set forth in *New York* v. *Belton*, 453 U. S. 454 (1981), and *Thornton:* that arresting officers may always search an arrestee's vehicle in order to protect themselves from hidden weapons. When an arrest is made in connection with a roadside stop, police virtually always have a less intrusive and more effective means of ensuring their safety—and a means that is virtually always employed: ordering the arrestee away from the vehicle, patting him down in the open, handcuffing him, and placing him in the squad car.

Law enforcement officers face a risk of being shot whenever they pull a car over. But that risk is at its height at the time of the initial confrontation; and it is *not at all* reduced by allowing a search of the stopped vehicle after

the driver has been arrested and placed in the squad car. I observed in *Thornton* that the government had failed to provide a single instance in which a formerly restrained arrestee escaped to retrieve a weapon from his own vehicle, 541 U. S., at 626; Arizona and its *amici* have not remedied that significant deficiency in the present case.

It must be borne in mind that we are speaking here only of a rule automatically permitting a search when the driver or an occupant is arrested. Where no arrest is made, we have held that officers may search the car if they reasonably believe "the suspect is dangerous and . . . may gain immediate control of weapons." *Michigan* v. *Long*, 463 U. S. 1032, 1049 (1983). In the no-arrest case, the possibility of access to weapons in the vehicle always exists, since the driver or passenger will be allowed to return to the vehicle when the interrogation is completed. The rule of *Michigan* v. *Long* is not at issue here.

JUSTICE STEVENS acknowledges that an officer-safety rationale cannot justify all vehicle searches incident to arrest, but asserts that that is not the rule *Belton* and *Thornton* adopted. (As described above, I read those cases differently). JUSTICE STEVENS would therefore retain the application of *Chimel* v. *California*, 395 U. S. 752 (1969), in the car-search context but would apply in the future what he believes our cases held in the past: that officers making a roadside stop may search the vehicle so long as the "arrestee is within reaching distance of the passenger compartment at the time of the search." *Ante*, at 18. I believe that this standard fails to provide the needed guidance to arresting officers and also leaves much room for manipulation, inviting officers to leave the scene unsecured (at least where dangerous suspects are not involved) in order to conduct a vehicle search. In my view we should simply abandon the *Belton-Thornton* charade of officer safety and overrule those cases. I would hold that a vehicle search incident to arrest is *ipso facto* "reasonable" only

when the object of the search is evidence of the crime for which the arrest was made, or of another crime that the officer has probable cause to believe occurred. Because respondent was arrested for driving without a license (a crime for which no evidence could be expected to be found in the vehicle), I would hold in the present case that the search was unlawful.

JUSTICE ALITO insists that the Court must demand a good reason for abandoning prior precedent. That is true enough, but it seems to me ample reason that the precedent was badly reasoned and produces erroneous (in this case unconstitutional) results. See *Payne* v. *Tennessee*, 501 U. S. 808, 827 (1991). We should recognize *Belton*'s fanciful reliance upon officer safety for what it was: "a return to the broader sort of [evidence-gathering] search incident to arrest that we allowed before *Chimel*." *Thornton, supra,* at 631 (SCALIA, J., concurring in judgment; citations omitted).

JUSTICE ALITO argues that there is no reason to adopt a rule limiting automobile-arrest searches to those cases where the search's object is evidence of the crime of arrest. *Post,* at 10 (dissenting opinion). I disagree. This formulation of officers' authority both preserves the outcomes of our prior cases and tethers the scope and rationale of the doctrine to the triggering event. *Belton*, by contrast, allowed searches precisely when its exigency-based rationale was least applicable: The fact of the arrest in the automobile context makes searches on exigency grounds *less* reasonable, not more. I also disagree with JUSTICE ALITO's conclusory assertion that this standard will be difficult to administer in practice, *post*, at 7; the ease of its application in this case would suggest otherwise.

No other Justice, however, shares my view that application of *Chimel* in this context should be entirely abandoned. It seems to me unacceptable for the Court to come forth with a 4-to-1-to-4 opinion that leaves the governing

rule uncertain. I am therefore confronted with the choice
of either leaving the current understanding of *Belton* and
*Thornton* in effect, or acceding to what seems to me the
artificial narrowing of those cases adopted by JUSTICE
STEVENS. The latter, as I have said, does not provide the
degree of certainty I think desirable in this field; but the
former opens the field to what I think are plainly uncon-
stitutional searches—which is the greater evil. I therefore
join the opinion of the Court.

# SUPREME COURT OF THE UNITED STATES

_____

No. 07–542

_____

## ARIZONA, PETITIONER *v.* RODNEY JOSEPH GANT

ON WRIT OF CERTIORARI TO THE SUPREME COURT OF
ARIZONA

[April 21, 2009]

JUSTICE BREYER, dissenting.

I agree with JUSTICE ALITO that *New York* v. *Belton*,
453 U. S. 454 (1981), is best read as setting forth a bright-
line rule that permits a warrantless search of the passen-
ger compartment of an automobile incident to the lawful
arrest of an occupant—regardless of the danger the ar-
rested individual in fact poses. I also agree with JUSTICE
STEVENS, however, that the rule can produce results
divorced from its underlying Fourth Amendment ration-
ale. Compare *Belton, supra*, with *Chimel* v. *California*,
395 U. S. 752, 764 (1969) (explaining that the rule allow-
ing contemporaneous searches is justified by the need to
prevent harm to a police officer or destruction of evidence
of the crime). For that reason I would look for a better
rule—were the question before us one of first impression.

The matter, however, is not one of first impression, and
that fact makes a substantial difference. The *Belton* rule
has been followed not only by this Court in *Thornton* v.
*United States*, 541 U. S. 615 (2004), but also by numerous
other courts. Principles of *stare decisis* must apply, and
those who wish this Court to change a well-established
legal precedent—where, as here, there has been consider-
able reliance on the legal rule in question—bear a heavy
burden. Cf. *Leegin Creative Leather Products, Inc.* v.
*PSKS, Inc.*, 551 U. S. 877, \_\_\_ (2007) (slip op., at 17–19)
(BREYER, J., dissenting). I have not found that burden

met. Nor do I believe that the other considerations ordinarily relevant when determining whether to overrule a case are satisfied. I consequently join JUSTICE ALITO's dissenting opinion with the exception of Part II-E.

# SUPREME COURT OF THE UNITED STATES

No. 07–542

ARIZONA, PETITIONER *v.* RODNEY JOSEPH GANT

ON WRIT OF CERTIORARI TO THE SUPREME COURT OF
ARIZONA

[April 21, 2009]

JUSTICE ALITO, with whom THE CHIEF JUSTICE and JUSTICE KENNEDY join, and with whom JUSTICE BREYER joins except as to Part II–E, dissenting.

Twenty-eight years ago, in *New York* v. *Belton*, 453 U. S. 454, 460 (1981), this Court held that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." (Footnote omitted.) Five years ago, in *Thornton* v. *United States*, 541 U. S. 615 (2004)—a case involving a situation not materially distinguishable from the situation here—the Court not only reaffirmed but extended the holding of *Belton,* making it applicable to recent occupants. Today's decision effectively overrules those important decisions, even though respondent Gant has not asked us to do so.

To take the place of the overruled precedents, the Court adopts a new two-part rule under which a police officer who arrests a vehicle occupant or recent occupant may search the passenger compartment if (1) the arrestee is within reaching distance of the vehicle at the time of the search or (2) the officer has reason to believe that the vehicle contains evidence of the offense of arrest. *Ante*, at 18. The first part of this new rule may endanger arresting officers and is truly endorsed by only four Justices; JUSTICE SCALIA joins solely for the purpose of avoiding a

"4-to-1-to 4 opinion." *Ante,* at 4 (concurring opinion). The second part of the new rule is taken from JUSTICE SCALIA's separate opinion in *Thornton* without any independent explanation of its origin or justification and is virtually certain to confuse law enforcement officers and judges for some time to come. The Court's decision will cause the suppression of evidence gathered in many searches carried out in good-faith reliance on well-settled case law, and although the Court purports to base its analysis on the landmark decision in *Chimel* v. *California,* 395 U. S. 752 (1969), the Court's reasoning undermines *Chimel.* I would follow *Belton*, and I therefore respectfully dissent.

I

Although the Court refuses to acknowledge that it is overruling *Belton* and *Thornton*, there can be no doubt that it does so.

In *Belton*, an officer on the New York Thruway removed the occupants from a car and placed them under arrest but did not handcuff them. See 453 U. S., at 456; Brief for Petitioner in *New York* v. *Belton*, O. T. 1980, No. 80–328, p. 3. The officer then searched a jacket on the car's back seat and found drugs. 453 U. S., at 455. By a divided vote, the New York Court of Appeals held that the search of the jacket violated *Chimel*, in which this Court held that an arresting officer may search the area within an arrestee's immediate control. See *State* v. *Belton*, 50 N. Y. 2d 447, 407 N. E. 2d 420 (1980). The justices of the New York Court of Appeals disagreed on the factual question whether the *Belton* arrestees could have gained access to the car. The majority thought that they could not have done so, *id.*, at 452, n. 2, 407 N. E. 2d, at 423, n. 2, but the dissent thought that this was a real possibility. *Id.*, at 453, 407 N. E. 2d, at 424 (opinion of Gabrielli, J.).

Viewing this disagreement about the application of the *Chimel* rule as illustrative of a persistent and important

problem, the *Belton* Court concluded that "'[a] single familiar standard'" was "'essential to guide police officers'" who make roadside arrests. 453 U. S., at 458 (quoting *Dunaway* v. *New York*, 442 U. S. 200, 213–214 (1979)). The Court acknowledged that articles in the passenger compartment of a car are not always within an arrestee's reach, but "[i]n order to establish the workable rule this category of cases requires," the Court adopted a rule that categorically permits the search of a car's passenger compartment incident to the lawful arrest of an occupant. 453 U. S., at 460.

The precise holding in *Belton* could not be clearer. The Court stated unequivocally: "[W]e hold that when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *Ibid.* (footnote omitted).

Despite this explicit statement, the opinion of the Court in the present case curiously suggests that *Belton* may reasonably be read as adopting a holding that is narrower than the one explicitly set out in the *Belton* opinion, namely, that an officer arresting a vehicle occupant may search the passenger compartment *"when* the passenger compartment is within an arrestee's reaching distance." *Ante*, at 7–8 (emphasis in original). According to the Court, the broader reading of *Belton* that has gained wide acceptance "may be attributable to Justice Brennan's dissent." *Ante*, at 8.

Contrary to the Court's suggestion, however, Justice Brennan's *Belton* dissent did not mischaracterize the Court's holding in that case or cause that holding to be misinterpreted. As noted, the *Belton* Court explicitly stated precisely what it held. In *Thornton*, the Court recognized the scope of *Belton*'s holding. See 541 U. S., at 620. So did JUSTICE SCALIA's separate opinion. See *id.*, at 625 (opinion concurring in judgment) ("In *[Belton]* we set

forth a bright-line rule for arrests of automobile occupants, holding that . . . a search of the whole [passenger] compartment is justified in every case"). So does JUSTICE SCALIA's opinion in the present case. See *ante*, at 1 (*Belton* and *Thornton* held that "arresting officers may always search an arrestee's vehicle in order to protect themselves from hidden weapons"). This "bright-line rule" has now been interred.

## II

Because the Court has substantially overruled *Belton* and *Thornton,* the Court must explain why its departure from the usual rule of *stare decisis* is justified. I recognize that stare decisis is not an "inexorable command," *Payne* v. *Tennessee*, 501 U. S. 808, 828 (1991), and applies less rigidly in constitutional cases, *Glidden Co.* v. *Zdanok*, 370 U. S. 530, 543 (1962) (plurality opinion). But the Court has said that a constitutional precedent should be followed unless there is a "'special justification'" for its abandonment. *Dickerson* v. *United States*, 530 U. S. 428, 443 (2000). Relevant factors identified in prior cases include whether the precedent has engendered reliance, *id.*, at 442, whether there has been an important change in circumstances in the outside world, *Randall* v. *Sorrell*, 548 U. S. 230, 244 (2006) (plurality opinion); *Burnet* v. *Coronado Oil & Gas Co.*, 285 U. S. 393, 412 (1932) (Brandeis, J., dissenting), whether the precedent has proved to be unworkable, *Vieth* v. *Jubelirer*, 541 U. S. 267, 306 (2004) (plurality opinion) (citing *Payne*, *supra*, at 827), whether the precedent has been undermined by later decisions, see, *e.g.*, *Patterson* v. *McLean Credit Union*, 491 U. S. 164, 173–174 (1989), and whether the decision was badly reasoned. *Vieth*, *supra*, at 306 (plurality opinion). These factors weigh in favor of retaining the rule established in *Belton*.

A

*Reliance.* While reliance is most important in "cases involving property and contract rights," *Payne*, *supra*, at 828, the Court has recognized that reliance by law enforcement officers is also entitled to weight. In *Dickerson*, the Court held that principles of *stare decisis* "weigh[ed]" heavily against overruling *Miranda* v. *Arizona*, 384 U. S. 436 (1966), because the *Miranda* rule had become "embedded in routine police practice." 530 U. S., at 443.

If there was reliance in *Dickerson*, there certainly is substantial reliance here. The *Belton* rule has been taught to police officers for more than a quarter century. Many searches—almost certainly including more than a few that figure in cases now on appeal—were conducted in scrupulous reliance on that precedent. It is likely that, on the very day when this opinion is announced, numerous vehicle searches will be conducted in good faith by police officers who were taught the *Belton* rule.

The opinion of the Court recognizes that "*Belton* has been widely taught in police academies and that law enforcement officers have relied on the rule in conducting vehicle searches during the past 28 years." *Ante*, at 16. But for the Court, this seemingly counts for nothing. The Court states that "[w]e have never relied on *stare decisis* to justify the continuance of an unconstitutional police practice," *ante,* at 15, but of course the Court routinely relies on decisions sustaining the constitutionality of police practices without doing what the Court has done here—*sua sponte* considering whether those decisions should be overruled. And the Court cites no authority for the proposition that *stare decisis* may be disregarded or provides only lesser protection when the precedent that is challenged is one that sustained the constitutionality of a law enforcement practice.

The Court also errs in arguing that the reliance interest that was given heavy weight in *Dickerson* was not "police

reliance on a rule requiring them to provide warnings but to the broader societal reliance on that individual right." *Ante*, at 17. The *Dickerson* opinion makes no reference to "societal reliance," and petitioner in that case contended that there had been reliance on *Miranda* because, among other things, "[f]or nearly thirty-five years, *Miranda*'s requirements ha[d] shaped law enforcement training [and] police conduct." See Brief for Petitioner in *Dickerson* v. *United States*, O. T. 1999, No. 99–5525, p. 33.

B

*Changed circumstances. A*bandonment of the *Belton* rule cannot be justified on the ground that the dangers surrounding the arrest of a vehicle occupant are different today than they were 28 years ago. The Court claims that "[w]e now know that articles inside the passenger compartment are rarely 'within "the area into which an arrestee might reach,"'" *ante*, at 17–18, but surely it was well known in 1981 that a person who is taken from a vehicle, handcuffed, and placed in the back of a patrol car is unlikely to make it back into his own car to retrieve a weapon or destroy evidence.

C

*Workability*. The *Belton* rule has not proved to be unworkable. On the contrary, the rule was adopted for the express purpose of providing a test that would be relatively easy for police officers and judges to apply. The Court correctly notes that even the *Belton* rule is not perfectly clear in all situations. Specifically, it is sometimes debatable whether a search is or is not contemporaneous with an arrest, *ante*, at 6–7, but that problem is small in comparison with the problems that the Court's new two-part rule will produce.

The first part of the Court's new rule—which permits the search of a vehicle's passenger compartment if it is

within an arrestee's reach at the time of the search—
reintroduces the same sort of case-by-case, fact-specific
decisionmaking that the *Belton* rule was adopted to avoid.
As the situation in *Belton* illustrated, there are cases in
which it is unclear whether an arrestee could retrieve a
weapon or evidence in the passenger compartment of a
car.

Even more serious problems will also result from the
second part of the Court's new rule, which requires officers
making roadside arrests to determine whether there is
reason to believe that the vehicle contains evidence of the
crime of arrest. What this rule permits in a variety of
situations is entirely unclear.

## D

*Consistency with later cases.* The *Belton* bright-line rule
has not been undermined by subsequent cases. On the
contrary, that rule was reaffirmed and extended just five
years ago in *Thornton*.

## E

*Bad reasoning.* The Court is harshly critical of *Belton*'s
reasoning, but the problem that the Court perceives can-
not be remedied simply by overruling *Belton*. *Belton*
represented only a modest—and quite defensible—
extension of *Chimel*, as I understand that decision.

Prior to *Chimel*, the Court's precedents permitted an
arresting officer to search the area within an arrestee's
"possession" and "control" for the purpose of gathering
evidence. See 395 U. S., at 759–760. Based on this "ab-
stract doctrine," *id.*, at 760, n. 4*,* the Court had sustained
searches that extended far beyond an arrestee's grabbing
area. See *United States* v. *Rabinowitz*, 339 U. S. 56 (1950)
(search of entire office); *Harris* v. *United States*, 331 U. S.
145 (1947) (search of entire apartment).

The *Chimel* Court, in an opinion written by Justice

Stewart, overruled these cases.  Concluding that there are only two justifications for a warrantless search incident to arrest—officer safety and the preservation of evidence— the Court stated that such a search must be confined to "the arrestee's person" and "the area from within which he might gain possession of a weapon or destructible evidence."  395 U. S., at 762–763.

Unfortunately, *Chimel* did not say whether "the area from within which [an arrestee] might gain possession of a weapon or destructible evidence" is to be measured at the time of the arrest or at the time of the search, but unless the *Chimel* rule was meant to be a specialty rule, applicable to only a few unusual cases, the Court must have intended for this area to be measured at the time of arrest.

This is so because the Court can hardly have failed to appreciate the following two facts.  First, in the great majority of cases, an officer making an arrest is able to handcuff the arrestee and remove him to a secure place before conducting a search incident to the arrest.  See *ante,* at 10, n. 4 (stating that it is "the rare case" in which an arresting officer cannot secure an arrestee before conducting a search).  Second, because it is safer for an arresting officer to secure an arrestee before searching, it is likely that this is what arresting officers do in the great majority of cases.  (And it appears, not surprisingly, that this is in fact the prevailing practice.[1])  Thus, if the area within an arrestee's reach were assessed, not at the time of arrest, but at the time of the search, the *Chimel* rule would  rarely come into play.

Moreover, if the applicability of the *Chimel* rule turned on whether an arresting officer chooses to secure an arrestee prior to conducting a search, rather than searching first and securing the arrestee later, the rule would "cre-

––––––––––
[1] See Moskovitz, A Rule in Search of a Reason: An Empirical Reexamination of *Chimel* and *Belton*, 2002 Wis. L. Rev. 657, 665.

ate a perverse incentive for an arresting officer to prolong the period during which the arrestee is kept in an area where he could pose a danger to the officer." *United States* v. *Abdul-Saboor,* 85 F. 3d 664, 669 (CADC 1996). If this is the law, the D. C. Circuit observed, "the law would truly be, as Mr. Bumble said, 'a ass.'" *Ibid.* See also *United States* v. *Tejada,* 524 F. 3d 809, 812 (CA7 2008) ("[I]f the police could lawfully have searched the defendant's grabbing radius at the moment of arrest, he has no legitimate complaint if, the better to protect themselves from him, they first put him outside that radius").

I do not think that this is what the *Chimel* Court intended. Handcuffs were in use in 1969. The ability of arresting officers to secure arrestees before conducting a search—and their incentive to do so—are facts that can hardly have escaped the Court's attention. I therefore believe that the *Chimel* Court intended that its new rule apply in cases in which the arrestee is handcuffed before the search is conducted.

The *Belton* Court, in my view, proceeded on the basis of this interpretation of *Chimel.* Again speaking through Justice Stewart, the *Belton* Court reasoned that articles in the passenger compartment of a car are "generally, even if not inevitably" within an arrestee's reach. 453 U. S., at 460. This is undoubtedly true at the time of the arrest of a person who is seated in a car but plainly not true when the person has been removed from the car and placed in handcuffs. Accordingly, the *Belton* Court must have proceeded on the assumption that the *Chimel* rule was to be applied at the time of arrest. And that is why the *Belton* Court was able to say that its decision "in no way alter[ed] the fundamental principles established in the *Chimel* case regarding the basic scope of searches incident to lawful custodial arrests." 453 U. S., at 460, n. 3. Viewing *Chimel* as having focused on the time of arrest, *Belton*'s only new step was to eliminate the need to decide on a case-by-case

basis whether a particular person seated in a car actually could have reached the part of the passenger compartment where a weapon or evidence was hidden. For this reason, if we are going to reexamine *Belton*, we should also reexamine the reasoning in *Chimel* on which *Belton* rests.

### F

The Court, however, does not reexamine *Chimel* and thus leaves the law relating to searches incident to arrest in a confused and unstable state. The first part of the Court's new two-part rule—which permits an arresting officer to search the area within an arrestee's reach at the time of the search—applies, at least for now, only to vehicle occupants and recent occupants, but there is no logical reason why the same rule should not apply to all arrestees.

The second part of the Court's new rule, which the Court takes uncritically from JUSTICE SCALIA's separate opinion in *Thornton,* raises doctrinal and practical problems that the Court makes no effort to address. Why, for example, is the standard for this type of evidence-gathering search "reason to believe" rather than probable cause? And why is this type of search restricted to evidence of the offense of arrest? It is true that an arrestee's vehicle is probably more likely to contain evidence of the crime of arrest than of some other crime, but if reason-to-believe is the governing standard for an evidence-gathering search incident to arrest, it is not easy to see why an officer should not be able to search when the officer has reason to believe that the vehicle in question possesses evidence of a crime other than the crime of arrest.

Nor is it easy to see why an evidence-gathering search incident to arrest should be restricted to the passenger compartment. The *Belton* rule was limited in this way because the passenger compartment was considered to be

the area that vehicle occupants can generally reach, 453 U. S., at 460, but since the second part of the new rule is not based on officer safety or the preservation of evidence, the ground for this limitation is obscure.[2]

## III

Respondent in this case has not asked us to overrule *Belton*, much less *Chimel*. Respondent's argument rests entirely on an interpretation of *Belton* that is plainly incorrect, an interpretation that disregards *Belton*'s explicit delineation of its holding. I would therefore leave any reexamination of our prior precedents for another day, if such a reexamination is to be undertaken at all. In this case, I would simply apply *Belton* and reverse the judgment below.

---

[2] I do not understand the Court's decision to reach the following situations. First, it is not uncommon for an officer to arrest some but not all of the occupants of a vehicle. The Court's decision in this case does not address the question whether in such a situation a search of the passenger compartment may be justified on the ground that the occupants who are not arrested could gain access to the car and retrieve a weapon or destroy evidence. Second, there may be situations in which an arresting officer has cause to fear that persons who were not passengers in the car might attempt to retrieve a weapon or evidence from the car while the officer is still on the scene. The decision in this case, as I understand it, does not address that situation either.